IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| MARIA MARTINEZ DE LOPEZ § | | |
| Plaintiff, § | | |
| § | | |
| v. § | No. EP-12-CV-374-ATB | |
| § | (by consent) | |
| CAROLYN W. COLVIN, § | | |
| Acting Commissioner of the § | | |
| Social Security Administration,[1] § | | |
| Defendant. § | | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons set forth below, this Court orders that the Commissioner's decision be **AFFIRMED**.

### I.   PROCEDURAL HISTORY

On October 5, 2010, Plaintiff filed an application for DIB, alleging a disability onset date of September 1, 2010. (R. 124). Her applications were denied initially and denied upon reconsideration. (R. 41, 49-51). Plaintiff filed a request for a hearing, which was held on April

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and the last sentence of 42 U.S.C. § 405(g), she is substituted as the Defendant herein.

No. EP-12-CV-374-ATB                    1

25, 2012.  (R. 27-40, 53).  The Administrative Law Judge ("ALJ") issued a decision on May 14, 2012, denying benefits.  (R. 14-22).  Subsequently, the Appeals Council denied review.  (R. 1-3).

## II.   ISSUE

Plaintiff presents the following issue for review:

1. Whether the ALJ's residual functional capacity ("RFC") determination is supported by substantial evidence.  (Pl.'s Br. 2, ECF No. 23).

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the limiting effects of Plaintiff's obesity when determining Plaintiff's RFC.  (*Id.* at 3-5).  Specifically, Plaintiff claims that the ALJ violated Social Security Ruling ("SSR") 02-1p because she failed to discuss Plaintiff's obesity and the limitations it could have on Plaintiff's ability to work.  (*Id.* at 4).  Accordingly, Plaintiff claims that because the ALJ's RFC finding did not contain limitations relating to Plaintiff's obesity, the rest of the ALJ's analysis was tainted.  (*Id.* at 5).  Consequently, Plaintiff seeks a reversal and remand for an award of benefits or for further administrative proceedings.  (*Id.*)

## III.   DISCUSSION

### A.   Standard of Review

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (citations omitted); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citation omitted).  "Substantial evidence 'is more than a mere scintilla, and less than a preponderance.'"  *Masterson*, 309 F.3d at 272 (citation omitted).  The Commissioner's findings will be upheld if supported by substantial evidence.  *Id.* (citation omitted).  A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices

or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (per curiam) (internal quotation marks and citation omitted).

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo,* or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272 (citation omitted). Conflicts in the evidence are for the Commissioner and not the courts to resolve. *Id.* (citation omitted); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citation omitted).

**B.      Evaluation Process**

The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a severe medically determinable physical or mental impairment; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at the first four steps of the analysis. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

In the present case, the ALJ found that Plaintiff had the following severe impairments: cervical and lumbosacral spondylosis, depression, anxiety, and somatoform disorder. (R. 16). The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the listed impairments. (R. 16-17). In doing so, the ALJ determined that Plaintiff's mental impairments did not meet the criteria of listing 12.06, Anxiety-related Disorders. (R. 16-17; 20 C.F.R. Part 404, Subpart P, Appendix 1). After considering the

entire record, the ALJ determined that Plaintiff retained the RFC to perform light work,[2] limited insofar as she "is limited to frequent climbing ramps, stairs, balancing[,] kneeling[,] and crawling. She can occasionally climb ladders, ropes or scaffolds; stoop and crouch. Additionally, [Plaintiff] is limited to occasional overhead reaching and handling. Work is limited to simple, routine, and repetitive tasks, with only occasional interaction with the public." (R. 18). The ALJ determined that Plaintiff was unable to perform her past relevant work. (R. 20). After considering Plaintiff's RFC, age, education, and work experience, in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and based on the testimony of the VE, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform. (R. 20-21). Specifically, the ALJ concluded that Plaintiff could perform the jobs of bakery worker conveyor line and fruit distributor. (R. 21). Consequently, the ALJ found that Plaintiff was not disabled through the date of the decision. (R. 21).

## C. The ALJ's Determination of Plaintiff's Residual Functional Capacity

Plaintiff contends that substantial evidence does not support the ALJ's RFC determination because the ALJ failed to properly accommodate Plaintiff's obesity. (Pl.'s Br. 3-5, ECF No. 23). She argues that the ALJ failed to comply with SSR 02-1p because the ALJ failed to discuss how Plaintiff's obesity could affect Plaintiff's ability to work. (*Id.* at 4).

---

[2] 20 C.F.R. § 404.1567(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

No. EP-12-CV-374-ATB                               4

Plaintiff further argues that the ALJ's allegedly faulty RFC determination taints the remaining steps of the sequential evaluation process. (*Id.* at 5).

Residual functional capacity ("RFC") is the most an individual can still do despite his or her limitations. 20 C.F.R. §404.1545; SSR 96-8p. The responsibility to determine the Plaintiff's RFC belongs to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). In making this determination, the ALJ must consider all the record evidence and determine the Plaintiff's abilities despite his or her physical and mental limitations. *Martinez*, 64 F.3d at 176. The ALJ must consider the limiting effects of an individual's impairments, even those that are non-severe, and any related symptoms. *See* 20 C.F.R. §§ 404.1529, 404.1545; SSR 96-8p. The relative weight to be given the evidence is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001) (per curiam). The ALJ is not required to incorporate limitations in the RFC that he or she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).

It is Plaintiff's burden to establish disability and to provide or identify medical and other evidence of his or her impairments. *See* 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512(c). A medically determinable impairment must be established by acceptable medical sources. 20 C.F.R. § 404.1513(a). Plaintiff's own subjective complaints, without objective medical evidence of record, are insufficient to establish disability. *See* 20 C.F.R. §§ 404.1508, 404.1528, 404.1529.

**D.     Analysis**

Plaintiff contends that the ALJ failed to consider the limitations that result from her obesity. (Pl.'s Br. 4, ECF No. 23). Plaintiff argues that the evidence indicates that she was five feet four inches tall and weighed between 180 and 187 pounds. (*Id.* at 4; *see also* R. 149, 223,

270, 310, 385). As a result, Plaintiff estimates that she had a body mass index ("BMI") that ranged between 31.6 and 32.1, putting her at a high risk for developing obesity-related impairments. (*Id.* at 4). Therefore, Plaintiff argues that the failure to properly analyze the limiting effects of Plaintiff's obesity constitutes a ground for reversal. (*Id.* at 4-5).

The Commissioner responds by arguing that the record is devoid of evidence that Plaintiff's doctors diagnosed her with or treated her for obesity. (Def.'s Br. 9, ECF No. 24, citing R. 221-52, 308-67, 383-98, 405-09). Contrary to the evidence provided by Plaintiff, the Commissioner contends that Plaintiff was five feet five inches tall and weighed between 174 to 187 pounds[3] and, on at least two occasions, Plaintiff's BMI was under 30.0. (*Id.*, citing R. 310, 318, 322, 325, 385, 389). The Commissioner also claims that Plaintiff did not raise the issue of obesity in her application materials or at the administrative hearing. (*Id.*, citing R. 27-40).

According to SSR 02-1p, "[o]besity is a complex, chronic disease characterized by excessive accumulation of body fat." The National Institutes of Health established guidelines for physicians to diagnose obesity. SSR 02-1p. Generally, if a person has a BMI of 30.0 or above, they are obese. *Id.* However, simply having a BMI over 30.0 does not always equate to obesity.

> [A]lthough there is often a significant correlation between BMI and excess body fat, this is not always the case. The Clinical Guidelines also provide for considering whether an individual of a given height and weight has excess body fat when determining whether he or she has obesity. Thus, it is possible for someone whose BMI is below 30 to have obesity if too large a percentage of the weight is from fat. Likewise, someone with a BMI above 30 may not have obesity if a large percentage of the weight is from muscle. However, in most cases, the BMI will show whether the individual has obesity. It also will usually be evident from the information in the case record whether the individual should not be found to have obesity, despite a BMI of 30.0 or above.

SSR 02-1p. A severe or non-severe impairment cannot be determined by a specific level of weight or BMI. *Johnson v. Astrue*, Civ. A. No. H-08-3658, 2010 WL 148411, at *17 (S.D. Tex.

---

[3] A review of the record indicates that Plaintiff was measured at five feet five inches tall at each doctor visit and weighed between 174 and 188 pounds.

Jan. 11, 2010).  Accordingly, obesity is not simply a BMI number but is instead usually accompanied by a diagnosis from a physician.

Plaintiff's medical diagnoses are silent regarding her alleged obesity and she made no mention of it during the hearing before the ALJ.  (R. 27-40, 222-52, 269-71, 309-98).  The issue was only first raised when Plaintiff sought review of the ALJ's decision.  (Pl.'s Br. 4-5, ECF No. 23).  Furthermore, the Commissioner correctly points out that none of Plaintiff's physicians diagnosed Plaintiff as obese.  (Def.'s Br. 9, ECF No. 24).  Pursuant to SSR 02-1p,

> When the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI, we may ask a medical source to clarify whether the individual has obesity. However, in most such cases we will use our judgment to establish the presence of obesity based on the medical findings and other evidence in the case record, even if a treating or examining source has not indicated a diagnosis of obesity. Generally, we will not purchase a consultative examination just to establish the diagnosis of obesity.

Although Plaintiff's alleged obesity was not specifically addressed by the ALJ, there is no evidence in the record that Plaintiff's alleged obesity limits her ability to function in any meaningful way.  *See Hobbs v. Astrue*, 627 F. Supp. 2d 719, 726-27 (W.D. La. 2009) (finding that while the ALJ should have recognized the plaintiff was obese based on her height and weight, "[he] did, in effect, consider the impact of [the plaintiff's] obesity on her ability to work when he considered the impact of the physical symptoms caused or aggravated by her obesity."). Plaintiff's treating physician, Dr. Gladina M. See, continuously described Plaintiff as "[w]ell nourished and well developed."  (R. 310, 318, 322, 325, 385, 389).  Moreover, Plaintiff made no subjective complaints regarding her weight to Dr. See and Dr. See did not diagnose Plaintiff as obese.  (R. 309, 311, 313, 315, 317, 319, 321, 323-24, 326, 384, 396, 388, 390).  Furthermore, the consultative examiner, Dr. Augustine O. Eleje, did not diagnose Plaintiff as obese and noted that Plaintiff was "well-developed and nourished with good attention to hygiene and body

habitus." (R. 270). Plaintiff made no subjective complaints to Dr. Eleje regarding her weight and Dr. Eleje observed that Plaintiff had lifting limitations but had no limitations with sitting, standing, moving about, handling objects, carrying, hearing, and speaking. (R. 269-70). Additionally, Dr. James W. Schutte described Plaintiff as having a medium build. (R. 285). None of the doctors who examined Plaintiff recorded concerns that Plaintiff's weight either exacerbated or caused any of her symptoms or limitations.

SSR 02-1p requires an ALJ to consider the effects of obesity when assessing RFC, including the fact that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." An ALJ may "not make assumptions about the severity or functional effects of obesity combined with other impairments," but instead must "evaluate each case based on the information in the case record." SSR 02-1p. The evidence in the record here fails to support, and Plaintiff has failed to demonstrate, how the combined effect of obesity with other impairments is disabling.

Because the ALJ's RFC assessment contemplated all the evidence regarding Plaintiff's health, and that evidence necessarily reflected the impact of her weight, the ALJ did not commit legal error notwithstanding her failure to explicitly discuss Plaintiff's obesity.

## IV.   CONCLUSION

Based on the foregoing, the Court **HEREBY ORDERS** that the decision of the Commissioner be **AFFIRMED** consistent with this opinion.

**SIGNED** and **ENTERED** this 2nd day of March, 2015.

**ANNE T. BERTON**
**U.S. MAGISTRATE JUDGE**